JACOB S. KREILKAMP (State Bar No. 248210)
jacob.kreilkamp@mto.com
WILLIAM D. TEMKO (State Bar No. 98858)
william.temko@mto.com
SARA A. McDERMOTT (State Bar No. 307564)
sara.mcdermott@mto.com
OMAR H. NOURELDIN (State Bar No. 301549)
omar.noureldin@mto.com
LAUREN M. HARDING (State Bar No. 308029)
lauren.harding@mto.com
ARIEL T. TESHUVA (State Bar No. 324238)
ariel.teshuva@mto.com
ESTALYN S. MARQUIS (State Bar No. 329780)
estalyn.marquis@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

KATHLEEN GUNERATNE (State Bar No. 250751)
KGuneratne@alcunc.org
AMY GILBERT (State Bar No. 316121)
AGilbert@aclunc.org
ACLU FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| Charles Criswell, Levi Johnson, Samuel Camposeco, Adam Ibarra, and California Attorneys for Criminal Justice,<br><br>    Plaintiffs,<br><br>    vs.<br><br>Michael Boudreaux, in his official capacity as Sheriff of Tulare County,<br><br>    Defendant. | Case No. 1:20-cv-01048-DAD-SAB<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>Filed Concurrently with Motion for Preliminary Injunction and Supporting Exhibits<br><br>Judge:   Hon. Dale A. Drozd<br>Dept:    5<br><br>Submitted for decision without oral argument |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Charles Criswell, Levi Johnson, Samuel Camposeco, Adam Ibarra, and California Attorneys for Criminal Justice will, and hereby do, move for provisional certification of the Provisional Class and a Subclass of Medically Vulnerable Persons, re-appointing Plaintiffs as class representatives, and re-appointing class counsel, pursuant to Federal Rule of Civil Procedure 23 and Local Rule 205.

For purposes of their request for a preliminary injunction, Plaintiffs seek to provisionally certify the following class: "all people who are now, or in the future will be, incarcerated in Tulare County jails" ("Provisional Class"), along with a subclass of "persons whose age or medical conditions put them at increased risk of severe illness from COVID-19 and who are confined pre-trial and pursuant to a judgment of conviction in the Tulare County Jails" ("Medically Vulnerable Subclass").

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Motion for Preliminary Injunction, the declarations and exhibits filed in support thereof, the Class Action Complaint, the other filings in this action, and any and all evidence, argument, or other matters that may be presented at a hearing.

On October 28, 2020, Amy Gilbert, Lauren Harding, Sara McDermott, Omar Noureldin, and Ariel Teshuva, counsel for Plaintiffs met and conferred with counsel for Defendant by telephone and gave notice of Plaintiffs' application for provisional class certification. *See* Ex. 1 to PI Motion (Noureldin Decl.) ¶ 2. Counsel advised that Plaintiffs would be moving for a preliminary injunction and would also be seeking to certify the class for purposes of the motion. *Id.* Defense counsel advised that they opposed the motion. *Id.*

On November 2, 2020, Counsel for Defendant advised Plaintiffs that Defendant does not oppose provisional certification of the Provisional Class or the Medically Vulnerable Subclass in the event the Court grants preliminary injunctive relief. *See id*. ¶ 3. Defendant will, however, be opposing any request for preliminary injunctive relief. *Id.*

| | | |
|---|---|---|
| 1 | DATED: November 2, 2020 | MUNGER, TOLLES & OLSON LLP |
| 2 | | |
| 3 | | By:   */s/ Lauren M. Harding* |
| 4 | | Lauren M. Harding
*Attorneys for Plaintiffs* |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 2

I. THE COURT SHOULD RE-CERTIFY THE PROVISIONAL CLASS FOR PURPOSES OF THE PRELIMINARY INJUNCTION ....................................................... 2

II. THE PROPOSED SUBCLASS MEETS THE REQUIREMENTS OF RULE 23(A) ........... 4

    A. The Subclass Is Too Numerous Such That Joinder Is Impracticable ........................ 4

    B. There Are Common Questions of Law and Fact to the Subclass ............................. 5

    C. The Plaintiffs' Claims Are Typical of Subclass Members' Claims ......................... 6

    D. Plaintiffs' Representation Is Adequate ..................................................................... 7

III. THE PROPOSED SUBCLASS MEETS THE REQUIREMENTS OF RULE 23(B)(2) ....................................................................................................................................... 7

IV. CONCLUSION ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdullah v. U.S. Sec. Assocs., Inc.*,
    731 F.3d 952 (9th Cir. 2013) ............................................................................................. 5

*Ahlman v. Barnes*,
    445 F. Supp. 3d 671 (C.D. Cal. 2020) ............................................................................... 1

*Alcantara v. Archambeault*,
    No. 20CV0756 DMS (AHG), 2020 WL 2315777 (S.D. Cal. May 1, 2020) .................... 1

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) ............................................................................................. 6

*Arroyo v. United States Dep't of Homeland Sec.*,
    No. SACV 19-815 JGB, 2019 WL 2912848 (C.D. Cal. June 20, 2019) .......................... 4

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................................. 5

*Inland Empire-Immigrant Youth Collective v. Nielsen*,
    No. EDCV 17-2048 PSG, 2018 WL 1061408 (C.D. Cal. Feb. 26, 2018) ........................ 4

*Johnson v. California,*
    543 U.S. 499 (2005) ........................................................................................................... 6

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................................... 3, 6, 8

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ....................................................................................... 6, 7

*Torres v. Milusnic*,
    No. 20-cv-4450 CBM PVCx, 2020 WL 4197285 (C.D. Cal. July 14, 2020) .................. 1

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................... 5

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) ........................................................................................... 7

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................................. passim

## INTRODUCTION

This Court already has provisionally certified a class of "all people who are now, or in the future will be, incarcerated in Tulare County jails" ("Provisional Class"). *See* Order on Plaintiffs' Application for Temporary Restraining Order ("TRO"), ECF No. 26, at 21. The Court need not revisit that reasoned decision and should provisionally re-certify the Provisional Class for purposes of Plaintiffs' present request for preliminary injunctive relief.

In addition, the Court should provisionally certify a subclass of "persons whose age or medical conditions put them at increased risk of severe illness from COVID-19 and who are confined pre-trial and pursuant to a judgment of conviction in the Tulare County Jails" ("Medically Vulnerable Subclass").[1] Like the Provisional Class, the Medically Vulnerable Subclass readily meets all four requirements of Rule 23(a) and can be maintained as a class under Rule 23(b)(2). Designating a subclass is appropriate to assist in managing Plaintiffs' requested emergency relief, which asks this Court to order Defendant to adopt policies and procedures to identify and further protect incarcerated individuals who are predisposed to suffering severe illness from COVID-19. *See* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

In certifying this subclass, this Court will find itself in good company, as federal courts within the Ninth Circuit have granted class certification for purposes of entering preliminary injunctive relief for medically vulnerable incarcerated individuals. *See, e.g.*, *Torres v. Milusnic*, No. 20-cv-4450 CBM PVCx, 2020 WL 4197285, at *23 (C.D. Cal. July 14, 2020) (provisionally certifying class of persons with medical vulnerabilities); *Ahlman v. Barnes*, 445 F. Supp. 3d 671,

---

[1] The conditions that increase the risk of severe illness from COVID-19 include: type 2 diabetes mellitus; chronic kidney disease; cancer; COPD (chronic obstructive pulmonary disease); immunocompromised state, weakened immune system from solid organ transplant; obesity (body mass index of 30 or higher); serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies; sickle cell disease; asthma (moderate to severe); cerebrovascular disease; liver disease; cystic fibrosis; hypertension (high blood pressure); compromised immune system (immunosuppression) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurological conditions, such as dementia; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); overweight (BMI > $25 kg/m^2$, but <$30 kg/m^2$); thalassemia; type 1 diabetes mellitus; people aged 55 or older. *See* Ex. 4, Harawa Decl. at ¶ 36.

687 (C.D. Cal. 2020) (same); *Alcantara v. Archambeault*, No. 20CV0756 DMS (AHG), 2020 WL 2315777, at *7 (S.D. Cal. May 1, 2020) (same). Defendant does not oppose certification of the Provisional Class or the Medically Vulnerable Subclass in the event that the Court grants preliminary injunctive relief; however, Defendant plans to oppose Plaintiffs' request for preliminary injunctive relief.

## ARGUMENT

This Court has previously provisionally certified the Provisional Class because it met all four requirements under Rule 23(a) and could be maintained as a class under Rule 23(b)(2). TRO at 21. Because Defendant's policies or lack of policies at the Jails continue to pose a substantial threat to all incarcerated persons' health and lives, the Court should provisionally re-certify the Provisional Class for purposes of Plaintiffs' request for a preliminary injunction.

Like the Provisional Class, the Medically Vulnerable Subclass meets each Rule 23(a) requirement: (1) by Defendant's own admission, at least 40 residents of Tulare County Jails are medically vulnerable, rendering joinder of individual claims to be impracticable; (2) members of the proposed Medically Vulnerable Subclass are subject to the same common questions as to whether or not Defendant must enact policies that accommodate their particular medical conditions; (3) Plaintiffs Levi Johnson and Charles Criswall, who each suffer from comorbidities with COVID-19, are medically vulnerable and thus have claims typical of the class; (4) this Court already has determined Plaintiffs are adequate class representatives, and Plaintiffs Johnson and Criswall would be adequate representatives for the Subclass. The Medically Vulnerable Subclass can also be maintained under Rule 23(b)(2) because, among other reasons, members would directly benefit from any injunctive relief this Court orders for medically vulnerable persons.

### I. THE COURT SHOULD RE-CERTIFY THE PROVISIONAL CLASS FOR PURPOSES OF THE PRELIMINARY INJUNCTION

This Court should provisionally certify the Provisional Class again for purposes of the preliminary injunction, which the Court has previously determined meets the requirements of Rule 23(a) and Rule 23(b)(2). As Plaintiffs previously argued in connection with the TRO, the Provisional Class meets all four requirements of Rule 23(a): (1) numerosity is satisfied because,

according to data reported by Defendant, as of August 1, 2020, there were approximately 1,086 people incarcerated in the Jails; (2) there are common questions pertaining to the entire class because class members are subject to the same policies or lack of policies related to social distancing, testing, and legal visits; (3) Plaintiffs' claims are typical of class members' claims because they are all currently incarcerated in the Jails and their claims arise from the same alleged failures of Defendant to adequately respond to COVID-19; (4) Plaintiffs are adequate class representatives because there is no conflict between the named Plaintiffs and members of the Provisional Class and Plaintiffs will vigorously prosecute this action; and the law firm of Munger, Tolles & Olson LLP and the ACLU of Northern California have extensive experience litigating class action lawsuits, including representing incarcerated people and in cases related to conditions of confinement during COVID-19. TRO at 22-26 (summarizing Plaintiffs' arguments). Based on those arguments, the Court provisionally certified the Provisional Class in connection with Plaintiffs' request for a TRO. *Id.* This Court also certified the class in response to Plaintiffs' argument that the Provisional Class could be provisionally maintained as a class under Rule 23(b)(2) because Plaintiffs seek uniform injunctive relief and Defendant's actions and omissions in failing to adequately respond to COVID-19 violate the rights of all proposed class members. *See id.* at 26-27 (citing *Parsons v. Ryan*, 754 F.3d 657, 688–89 (9th Cir. 2014)).

As explained further in Plaintiffs' concurrently filed Motion for Preliminary Injunction, not enough has changed in the Jails since this Court's September 2, 2020 TRO to justify departure from the Court's previous decision to provisionally certify the class. Regarding numerosity, to Plaintiffs' knowledge, Defendant has not reduced the number of incarcerated individuals in the Jails in response to the Court's Order. And Defendant continues to operate the Jails in a manner that violates the constitutional rights of incarcerated people, including by (1) failing to implement an effective testing policy that would identify and help isolate persons infected with the virus, (2) failing to identify and adequately protect the Medically Vulnerable Subclass, and (3) in response to this Court's TRO, implementing a punitive "social distancing" policy in which incarcerated individuals are allowed out of their cells for only three hours per week. Those policies (or lack of policies) raise questions common to the entire class, such as whether defendant has

implemented effective testing protocols to prevent the spread of COVID-19 in the Jails. *See* TRO at 23. Defendant's post-TRO conduct also poses new common questions, such as whether Defendant's "social distancing" policy is punitive and whether it interferes with class members' right to exercise under the U.S. Constitution. As before, Plaintiffs' claims are typical of the class because they all relate to the same alleged failures of Defendant to respond adequately to COVID-19. *See* TRO at 24-25. Finally, Plaintiffs, who are still incarcerated in the Jails, are adequate class representatives because they remain committed to zealously prosecuting this case on behalf of all class members.

In short, the conditions at the Jails have not changed enough to justify departing from this Court's earlier, well-reasoned decision that the Provisional Class should be provisionally certified. This Court should thus re-certify the Provisional Class for purposes of the preliminary injunction.

## II.     THE PROPOSED SUBCLASS MEETS THE REQUIREMENTS OF RULE 23(A)

### A.     The Subclass Is Too Numerous Such That Joinder Is Impracticable

This Court already has determined that the Provisional Class, totaling approximately 1,086 persons as of August 1, 2020, is too numerous such that joinder of individual parties would be impracticable. *See* TRO at 22. The Medically Vulnerable Subclass is also sufficiently numerous. For purposes of Rule 23(a)(1), although no specific number is needed, "forty or more members will generally satisfy the numerosity requirement." *Arroyo v. United States Dep't of Homeland Sec.,* No. SACV 19-815 JGB, 2019 WL 2912848, at *9 (C.D. Cal. June 20, 2019).

There are significantly more than 40 persons residing in Tulare County Jails who have a medical condition that render them predisposed to suffering severe illness from COVID-19: In response to a Public Records Act request, Defendant has acknowledged that at least 46 of his residents have diabetes, 31 have chronic lung disease or moderate to severe asthma, 30 have severe obesity, and 60 have liver diseases. *See* ECF 11-7 (Verner-Crist Decl.), Ex. F. As explained by Dr. Nina Harawa, each of these conditions predisposes the individual to suffering severe illness from COVID-19. *See* Ex 4, Harawa Decl. ¶ 36. Accordingly, by Defendant's own admission, over 40 persons in Tulare County Jails have conditions qualifying them for the Medically Vulnerable Subclass.

And there is reason to believe Defendant's reported figures grossly underestimate the figures of people with vulnerable medical conditions. *See Inland Empire-Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048 PSG, 2018 WL 1061408, at *7 (C.D. Cal. Feb. 26, 2018) (numerosity satisfied when "general knowledge and common sense indicate that [the class] is large") (quotations omitted). The Centers for Disease Control ("CDC") estimates that 33.2% of adults over 20 have hypertension, 15% of the population has diabetes, 7.7% of adults over 18 have asthma.[2] Furthermore, incarcerated individuals are more likely to have health problems from COVID-19 than the general population. *See* Harawa Decl. ¶ 35. If the population of the Tulare County Jails is representative of those statistics, as many as 300 or more persons have hypertension, 150 or more have diabetes, and 70 or more have asthma. The Medically Vulnerable Subclass plainly satisfies Rule 23(a)'s numerosity requirement.

### B. There Are Common Questions of Law and Fact to the Subclass

The Medically Vulnerable Subclass also raises "questions of law or fact common to the [sub]class." *See* Fed. R. Civ. P. 23(a)(2). This requirement has "been construed permissively," *see Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011), and can be satisfied with even a single common issue. *See e.g., Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (commonality "does not . . . mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single *significant* question of law or fact.") (citations and internal marks omitted) (emphasis in original). Stated differently, commonality requires plaintiffs to demonstrate only that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

---

[2] *See* National Center for Health Statistics, *FastStats: Hypertension* (Oct. 30, 2020), https://www.cdc.gov/nchs/fastats/hypertension.htm; National Center for Health Statistics, *FastStats: Diabetes* (Oct. 30, 2020), https://www.cdc.gov/nchs/fastats/diabetes.htm; National Center for Health Statistics, *FastStats: Asthma* (Oct. 30, 2020), https://www.cdc.gov/nchs/fastats/asthma.htm.  The Court may also take judicial notice of publicly accessible information displayed on government websites. *See King v. Cnty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018).

1    This Court has already determined that there are questions of law and fact common to the
2 Provisional Class to satisfy the requirements under Rule 23(a)(2). *See* TRO at 24. Many of the
3 same questions pertaining to the Provisional Class also apply to the Medically Vulnerable
4 Subclass. Namely, all members of the Medically Vulnerable Subclass are subject to the same
5 practices and policies (or lack thereof) as non-medically vulnerable individuals. Whether or not
6 members of the Medically Vulnerable Subclass should be subject to *additional* practices and
7 policies that accommodate their increased risk of contracting COVID-19 is a question common to
8 the subclass. This question has several components that are also common to the class—for
9 instance, (a) if the Medically Vulnerable Subclass should be housed separately from the general
10 population; (b) if the Subclass should eat with, bathe with, and use the same facilities as the
11 general population; and (c) if the Subclass should receive additional testing and/or medical care.
12   Commonality is readily satisfied where, as here, a lawsuit challenges "systemic policies
13 and practices that allegedly expose inmates to a substantial risk of harm," even if there may be
14 "individual factual differences among class members." *Parsons v. Ryan*, 754 F.3d 657, 681-82
15 (9th Cir. 2014) (collecting cases and affirming certification of class and subclass of inmates
16 challenging Eighth Amendment violations in Arizona's prison system); *see also Armstrong v.*
17 *Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*,
18 543 U.S. 499 (2005), ("[C]ommonality is satisfied where the lawsuit challenges a system-wide
19 practice or policy that affects all of the putative class members.").
20   **C.   The Plaintiffs' Claims Are Typical of Subclass Members' Claims**
21   Named Plaintiffs' claims are also typical of those of both the Provisional Class and
22 proposed Medically Vulnerable Subclass. *See* Fed. R. Civ. P. 23(a)(3) (requiring "the claims . . .
23 of the representative parties [be] typical of the claims . . . of the class"). The test of typicality is
24 "'whether other members [of the class] have the same or similar injury, whether the action is
25 based on conduct which is not unique to the named plaintiffs, and whether other class members
26 have been injured by the same course of conduct.'" *Parsons*, 754 F.3d at 685 (citation omitted).
27 Typicality is satisfied "when each class member's claim arises from the same course of events,
28 and each class member makes similar legal arguments to prove the defendant's liability."

*Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation and citation omitted). "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.* (quotation marks and citation omitted).

In its September 2, 2020 Order, the Court found that the named Plaintiffs' claims were typical of the Proposed Class. *See* TRO at 25. Similarly, the claims of Plaintiff Levi Johnson, who suffers from congenital heart failure, hypertension, and respiratory breathing problems, and Plaintiff Charles Criswell, who suffers from diabetes and hypertension, are typical of those of the Medically Vulnerable Subclass. *See* Decl. of Johnson, ECF 11-17 at ¶ 3; Decl. of Criswall, ECF 11-13. Like Plaintiffs Johnson and Criswall, the Medically Vulnerable Subclass's claims all arise from the same failure of Defendant to create adequate policies and procedures to protect the unique vulnerabilities of those who are at increased risk of severe illness from COVID-19. Without this Court's intervention, all persons in the Medically Vulnerable Subclass will suffer the same harm: The significant and avoidable risk of serious illness and even potential death from COVID-19.

### D.     Plaintiffs' Representation Is Adequate

This Court already has ruled that the named Plaintiffs met the adequacy requirement under Rule 23(a)(4) because Plaintiffs were adequate class representatives and class counsel. *See* TRO at 26. The Court appointed the ACLU Foundation of Northern California and the law firm Munger, Tolles & Olson as class Counsel. *Id.* at 27. The Court need not revisit those rulings for purposes of this provisional class certification request and should reaffirm its ruling that named Plaintiffs and their counsel are adequate representatives. In addition, because Plaintiffs Levi Johnson and Charles Criswall have medical vulnerabilities and would be subject to any injunctive relief this Court orders for the Subclass, they are adequate representatives for the Medically Vulnerable Subclass.

### III.    THE PROPOSED SUBCLASS MEETS THE REQUIREMENTS OF RULE 23(B)(2)

In addition to satisfying the four prerequisites of Rule 23(a), the Medically Vulnerable Subclass qualifies for class treatment under Rule 23(b)(2). Rule 23(b)(2) requires Plaintiffs to

establish that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) was adopted precisely for circumstances such as these—namely, to "permit the prosecution of civil rights actions." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). Accordingly, Rule 23(b)(2) is satisfied when, as here, "class members complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez*, 591 F.3d at 1125-26 (citations omitted) (holding that class of noncitizens bringing writs of habeas corpus claims relating to detention met Rule 23(b)(2) criteria because "all class members' [sought] the exact same relief as a matter of statutory or, in the alternative, constitutional right"). That some class members "have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Id.*

In its September 2, 2020 Order, the Court found the Provisional Class "clearly satisfie[s] the requirements of Rule 23(b)(2)." TRO at 27 (citing *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014)). Like the Provisional Class, the Medically Vulnerable Subclass meet the requirements of Rule 23(b)(2) for at least two reasons. *First,* Defendant's actions and omissions are generally applicable to the Medically Vulnerable Subclass as a whole because his failure to develop policies and procedures that accommodate the unique vulnerabilities of persons who are at greater risk of illness from COVID-19 significantly increases the risks for all of the members of the proposed Medically Vulnerable Subclass. *Second*, Plaintiffs' requested injunctive relief, if enacted, would apply uniformly to each Subclass member and would benefit each member of the Medically Vulnerable Subclass. For example, an order requiring the Jail to provide routine medical checks to the Medically Vulnerable Subclass would apply to each Subclass member uniformly—regardless of whether or not any class member has contracted COVID-19 and regardless of what medical condition they have (e.g., diabetes or asthma).

In short, this Court's decision to grant Plaintiffs' request for preliminary injunctive relief would afford all Subclass members constitutionally adequate protection from COVID-19. Certification under Rule 23(b)(2) is appropriate under such circumstances. *See Parsons*, 754 F.3d

at 689 (holding declaratory and injunctive relief proper as to class where "every [member] . . . is allegedly suffering the same (or at least a similar) injury and that injury can be alleviated for every class member by uniform changes in . . . policy and practice").

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) provisionally re-certify the Provisional Class for purposes of granting preliminary injunctive relief and (2) provisionally certify the Medically Vulnerable Subclasss.

DATED:  November 2, 2020                    MUNGER, TOLLES & OLSON LLP

By:  */s/ Lauren M. Harding*
Lauren M. Harding
*Attorneys for Plaintiffs*