1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11

CHARLES CRISWELL, et al.,

No.  1:20-cv-01048-DAD-SAB

12

Plaintiffs,

13

v.

ORDER GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

14

MICHAEL BOUDREAUX, in his official
capacity as Sheriff of Tulare County,

15

(Doc. Nos. 92, 93)

16

Defendant.

17
18

　　　This matter came before the court on November 29, 2021 and December 7, 2021 for a

19

hearing on the unopposed motion for final approval of a class action settlement and for an award

20

of attorneys' fees and costs filed on behalf of plaintiffs Charles Criswell, Levi Johnson, Samuel

21

Camposeco, Adam Ibarra, and California Attorneys for Criminal Justice, (collectively

22

"plaintiffs").  (Doc. No. 92.)  Attorneys Ariel Teshuva of Munger, Tolles & Olson LLP and

23

Emilou H. MacLean and Ryann Rae McMurry of the American Civil Liberties Union of Northern

24

California appeared by video on behalf of plaintiffs and the putative class.  Attorneys Christopher

25

M. Pisano and Emily S. Chaidez of Best, Best & Krieger LLP appeared by video for defendant

26

Michael Boudreaux, in his official capacity as Sheriff of Tulare County.  For the reasons set forth

27

below, the court will grant final approval of the class action settlement and will award attorneys'

28

fees and costs.

1

1          **BACKGROUND**

2          The court previously summarized plaintiffs' allegations in its September 2, 2020 order

3   granting plaintiffs' application for provisional class certification and motion for a temporary

4   restraining order.  (Doc. No. 26 ("TRO").)  The court will not repeat that factual background in

5   this order.

6          On September 29, 2021, the court granted conditional class certification and preliminary

7   approval of the parties' class action settlement.  (Doc. No. 88.)  Following the grant of

8   preliminary approval, on November 1, 2021, plaintiffs filed the pending unopposed motion for

9   final approval of the parties' class action settlement.  (Doc. No. 92.)[1]  In support of their pending

10  motion, plaintiffs have submitted several declarations from eight inmates confined at the Tulare

11  County Jails ("the Jails"), as well as a declaration from Robert B. Greifinger, M.D., an expert

12  witness regarding health care in jails and prisons.  (Doc. Nos. 92-21–92-29.)

13  /////

---

14  [1]  Plaintiffs also filed a request for leave to file a memorandum of points and authorities in

15  support of their motion for final approval that exceeds the page limitation by five pages so that
    the issues presented could be adequately briefed.  (Doc. No. 93.)  The court finds good cause to

16  grant plaintiffs' request and has considered all thirty pages of their supporting memorandum.
    However, to the extent plaintiffs' memorandum described and outlined alleged non-compliance

17  by defendant with the terms of the settlement agreement, the court did not find such factual
    narrative to be relevant to its analysis and resolution of the pending motion for final approval.

18  Although defendant sought to file a response under seal to address plaintiffs' allegations and
    purported evidence of his non-compliance, i.e., "to clear the factual record," the court denied

19  defendant's request to seal and encouraged defendant to reconsider his filing in light of the
    court's view that the competing factual narratives are not relevant to the court's consideration of

20  the pending motion.  (*See* Doc. No. 98.)  Defendant did not thereafter file a response.  Despite the
    fact that the court expressed its view with regard to the irrelevance of any current alleged non-

21  compliance, on November 22, 2021, plaintiffs filed a reply in support of their motion for final
    approval, in which plaintiffs again list several purported instances of defendant's failure to

22  comply with the settlement agreement and urge the court to grant final approval as soon as
    possible because they intended to file a motion to enforce the settlement agreement within three

23  days of the court's order granting final approval of the parties' settlement.  (Doc. No. 99.)  As the
    court explained at the first hearing on November 29, 2021, such an expedited resolution of any

24  motion for enforcement is "very unrealistic given the extreme and long-time lack of judicial
    resources that the District Court in the Eastern District of California has suffered under for almost

25  two years now."  (Doc. No. 102 at 29.)  At the second hearing on December 7, 2021, plaintiffs'
    counsel informed the court that they no longer intend pursue the litigation strategy of immediately

26  filing an emergency motion for enforcement of the settlement agreement following the issuance

27  of this order.

28

2

As summarized by the court in its order granting preliminary approval of the parties' settlement, the Settlement Agreement provides for the following substantive relief: (1) injunctive relief requiring defendant to implement, or continue to implement, a wide variety of policies to guard against the spread of the COVID-19 virus in the Jails; and (2) injunctive relief for monitoring the implementation of the settlement agreement, including providing for three unannounced site visits to the Jails by an independent expert monitor and regular public reporting by defendant. (Doc. No. 88 at 2.) The Settlement Agreement requires defendant to maintain policies consistent with the TRO and CDC guidance with regard to masks, social distancing, quarantine/isolation, testing and screening, contact tracing, out-of-cell time, attorney visitation, vaccines and vaccine education, and chronic care for medically vulnerable class members. (Doc. No. 92-2 at 3–8.) The parties' Settlement Agreement also provides for monitoring of defendant's compliance by requiring defendant to post weekly updates and to notify class counsel regarding class members who test positive for COVID-19 or who have been exposed to COVID-19. (*Id.*) Although the Settlement Agreement provides that Michael Brady would serve as the independent expert monitor and make three unannounced visits to the Jails before December 31, 2021 to ensure compliance with the parties' Settlement Agreement, the parties have agreed to two material modifications of the settlement in this regard because Mr. Brady has experienced unforeseen health circumstances and is currently unable to serve as the monitor. (Doc. No. 92 at 23–24.) First, the parties have stipulated that Julian Martinez, a highly qualified senior consultant at Mr. Brady's firm who has served as a monitor in other cases involving jails and prisons, will act as Mr. Brady's proxy during his incapacitation. (*Id.* at 23.) Second, in light of Mr. Brady's current health issues, the parties have agreed that unannounced expert visits to the Jails may continue for an additional month, until January 31, 2022. (*Id.* at 24.)

In their pending motion, plaintiffs explain that in early October 2021, the Jails experienced an outbreak of COVID-19, with at least 95 class members testing positive for the virus as of November 1, 2021, including one class member who died on October 8, 2021 and another class member who was hospitalized. (*Id.* at 13.) According to plaintiffs, defendant failed to take steps to prevent such an outbreak and also failed to react quickly and effectively in

1    response to that outbreak.  (*Id.*)  In particular, plaintiffs contend that defendant and the Tulare

2    County Sheriff's Department ("TCSD") "delayed testing and isolating symptomatic class

3    members, delayed implementing surveillance testing outside of the modules where there were

4    known COVID-19 infections, failed to consistently isolate COVID-positive class members, and .

5    . . house[s] COVID-positive and COVID-negative individuals in shared cells against clear public

6    health guidance and the express terms of the Settlement Agreement."  (*Id.* at 8.)

7         Plaintiffs maintain that "[i]f effectively implemented, the terms of the parties' Settlement

8    Agreement . . . ensure that class members are meaningfully protected from the risk that COVID-

9    19 poses to their health and safety."  (*Id.* at 20.)  Plaintiffs contend that defendant has not been

10   fully complying with the terms of the Settlement Agreement, as shown by defendant's response to

11   the recent COVID-19 outbreak in the Jails in October 2021.  (*Id.* at 12–20, 31–35.)  Nevertheless,

12   plaintiffs urge the court to expeditiously grant final approval of the parties' settlement because the

13   Settlement Agreement's terms remain adequate and fair, and defendant's alleged non-compliance

14   is further cause for the court to approve the settlement and order defendant to comply with its

15   terms.  (*Id.* at 35–36.)  In other words, the sooner the court grants final approval of the settlement,

16   the sooner the parties can timely request any modifications (as contemplated by the Settlement

17   Agreement) or bring any disputes regarding enforcement of the agreement to the court's attention,

18   if necessary.  (*Id.*)  Plaintiffs stress that time is of the essence in this regard because defendant's

19   compliance with the substantive terms of the Settlement Agreement is essential for the settlement

20   to provide meaningful protection to class members from the spread of COVID-19 in the Jails.

21   (*Id.*)

22        In addition, plaintiffs note that although a few class members filed objections with the

23   court (Doc. Nos. 89–91), none of those objections support denying final approval of the

24   settlement.  (Doc. No. 92 at 31–37.)  The substance of those objections pertains to defendant's

25   failure to comply with the Settlement Agreement, for example, by allegedly not testing

26   symptomatic inmates who requested COVID-19 testing, by allegedly denying access to out-of-

27   cell time, and by allegedly not offering vaccines to inmates.  (*Id.*)  Indeed, one objector, plaintiff

28   Camposeco, subsequently withdrew his objection, declaring that he does "not trust the

1  [defendant] and think[s] that TCSD has carelessly and vindictively handled this COVID-19

2  outbreak, but [he] think[s] the Settlement Agreement will force TCSD to properly protect

3  incarcerated people in the Tulare Jails," and he "would like the Settlement Agreement to go into

4  full effect so that the plaintiffs can bring TCSD into compliance with it," noting that his

5  "objection, at heart, was [] venting [his] frustrations at TCSD's non-compliance with the

6  Settlement Agreement."  (Doc. No. 92-23 at ¶ 18.)

7  **FINAL CERTIFICATION OF CLASS ACTION**

8       The court has addressed and evaluated the standards for class certification in the TRO and

9  the order granting preliminary approval of the settlement and has found certification warranted.

10  (Doc. Nos. 26 at 26; 88 at 4–5.)  The court will not repeat its prior analysis here.  Because no

11  additional issues concerning class certification have been raised, the court finds no basis to revisit

12  any of the analysis contained in those prior orders.  Final class certification in this case is

13  appropriate.  The following class is therefore certified for settlement purposes:  "All people who

14  are currently incarcerated in the Tulare County Jails or will be incarcerated in the Tulare County

15  Jails at any point before the Termination Date of the Settlement Agreement."  (Doc. No. 92-2 at

16  9.)

17       In addition, plaintiffs Ibarra and Camposeco are confirmed as class representatives.[2]

18  Plaintiffs' counsel Munger, Tolles & Olson LLP and the American Civil Liberties Union of

19  Northern California are confirmed as class counsel.

20  **FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

21       Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P.

22  23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

23  purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

24  court's approval.").  "Approval under 23(e) involves a two-step process in which the Court first

25  _____

26  [2]  As the court noted in its order granting preliminary approval of the parties' settlement, plaintiffs
   Criswell and Johnson are no longer incarcerated in the Jails, and thus did not seek to represent the
27  class in connection with the parties' settlement agreement.  (Doc. No. 88 at 2, n.2; *see also* Doc.
   No. 92 at 9 (noting that Levi Johnson and Charles Criswell [] are no longer in Defendant's
28  custody").

determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Rule 23 requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement in this action was filed on the court's docket (*see* Doc. No. 118-8), and class members have been given an opportunity to object thereto (*see* Doc. Nos. 82-3 at 10; 88 at 9.) The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.      Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found the notice to be satisfactory. (Doc. No. 88 at 8–9.) Consistent with the court's approval of that notice plan, defendant posted the approved notice in the Jails on September 30, 2021, in both the English and Spanish languages, and the notices were also posted on the ACLU's website. (Doc. No. 92 at 24.) Moreover, as noted above, in

1  response to receiving this notice, a few class members did file objections to the Settlement

2  Agreement with the court, and one class member even filed a letter expressing his interest and

3  support for the settlement.  (*See* Doc. Nos. 89–91, 94.)

4      Given the above, the court concludes that "appropriate notice" was provided to the class

5  here.  *See* Fed. R. Civ. P. 23(c)(2)(A) (providing that for injunctive-relief only classes certified

6  under Rule 23(b)(2), "the court may direct appropriate notice to the class").

7  **B.     Final Fairness Hearing**

8      On November 29, 2021 and December 7, 2021, the court held a final fairness hearing, at

9  which class counsel and defense counsel appeared.  In addition, named plaintiffs Adam Ibarra and

10  Samuel Camposeco and class member Jorge Rivera appeared at the hearing in support of the

11  pending motion for final approval of the settlement.  Objectors Pedro Sanchez and Joe Anaya-

12  Casarez also appeared at the hearing, but withdrew their objections to the Settlement Agreement

13  at the December 7, 2021 hearing, after receiving clarification from plaintiffs' counsel and defense

14  counsel regarding the settlement agreement's provisions for out-of-cell time.  For the reasons

15  explained below, the court now determines that the settlement reached in this case is fair,

16  adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

17      At the final approval stage, the primary inquiry is whether the proposed settlement "is

18  fundamentally fair, adequate, and reasonable."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th

19  Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the

20  individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at

21  1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir.

22  1982)); *see also Lane*, 696 F.3d at 818–19.  Having already completed a preliminary examination

23  of the agreement, the court reviews it again, mindful that the law favors the compromise and

24  settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

25  Cir. 2008); *Churchill Vill., L.L.C.,* 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d

26  1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to

27  approve or reject a settlement is committed to the sound discretion of the trial judge because he

28  [or she] is exposed to the litigants and their strategies, positions, and proof."  *Staton*, 327 F.3d at

1    953 (quoting *Hanlon*, 150 F.3d at 1026).

2           In assessing the fairness of a class action settlement, courts balance the following factors:

3                  (1) the strength of the plaintiffs' case; (2) the risk, expense,
                   complexity, and likely duration of further litigation; (3) the risk of
4                  maintaining class action status throughout the trial; (4) the amount
                   offered in settlement; (5) the extent of discovery completed and the
5                  stage of the proceedings; (6) the experience and views of counsel;
                   (7) the presence of a governmental participant; and (8) the reaction
6                  of the class members to the proposed settlement.

7    *Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779

8    F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir.

9    2009).  These settlement factors are non-exclusive, and each need not be discussed if they are

10   irrelevant to a particular case.  *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

11          1.     Strength of Plaintiffs' Case

12          When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

13   conclusions regarding the contested issues of fact and law that underlie the merits of th[e]

14   litigation."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz.

15   1989).  The court cannot reach such a conclusion because evidence has not been fully presented.

16   *Id*.  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

17   litigation and the impact of those considerations on the parties' decisions to reach these

18   agreements."  *Id*.

19          The relative success that plaintiffs have had thus far litigating this action speaks to both

20   the strengths and weaknesses of their case.  In the TRO, the court concluded that plaintiffs had

21   established that they were likely to succeed on the merits of their claims of deliberate indifference

22   to serious medical needs in violation of the Eighth and Fourteenth Amendment, their right-to-

23   access claims brought under the First, Sixth, and Fourteenth Amendments, and their claim

24   brought under California's Bane Act.  (Doc. No. 26 at 31–41.)  In light of plaintiff's successful

25   effort to obtain the TRO, plaintiffs' case was certainly strong at that time.  However, the court

26   evaluated defendant's subsequent actions after issuance of the TRO in connection with plaintiffs'

27   motion for a preliminary injunction and concluded at that time that plaintiffs had not shown that

28   those actions were objectively unreasonable.  (Doc. No. 55 at 30–32.)  Because plaintiffs had

1  failed to show a likelihood of success on the merits of their deliberate indifference claims at that

2  time, the court denied plaintiffs' motion for a preliminary injunction.  (*Id.*)  Thus, the relative

3  strength of plaintiff's claims is not static; it fluctuates given the ever-evolving and changing

4  conditions brought about by the COVID-19 pandemic, including the rise and arrival of variants of

5  the virus, the availability and reliability of COVID-19 tests, and the availability and efficacy of

6  COVID-19 vaccinations and antibody treatments.

7        Accordingly, the court finds that consideration of this factor weighs moderately in favor

8  of granting final approval of the parties' settlement in this action.

9        2.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

10        "[T]here is a strong judicial policy that favors settlements, particularly where complex

11  class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class

12  Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and

13  expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016

14  WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-

15  AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

16        In the pending motion for final approval, plaintiffs "recognize that they did not win every

17  motion before this Court and that a trial date may not be set until the COVID-19 pandemic is no

18  longer as severe, or even after the pandemic is over," and that "[t]he changing landscape of the

19  pandemic and the increasing availability of three safe and effective vaccines also make future

20  litigation uncertain."  (Doc. No. 92 at 29.)  The plaintiffs contend that "the Settlement Agreement

21  provides adequate relief, particularly given the costs, risks, and delay associated with extensive

22  litigation, including trial and appeal," and the settlement "mitigates the need for further litigation

23  on Defendant's COVID-19 policies and helps protect class members from the virus for the next

24  critical period of time."  (*Id.* at 29–30.)

25        The court finds that consideration of this factor weighs in favor of granting final approval.

26        3.    Risk of Maintaining Class Action Status Throughout Trial

27        Plaintiffs did not address this factor in their pending motion.  Nonetheless, the court

28  previously granted provisional and conditional class certification in connection with plaintiffs'

1    motion for a temporary restraining order and motion for preliminary approval of their class action

2    settlement, respectively.  (Doc. Nos. 26, 88.)  There does not appear to be any risk that plaintiffs

3    would be unable to maintain class action status throughout trial.

4            Accordingly, the court finds this factor also weighs in favor of final approval.

5            4.      Amount Offered in Settlement

6            The parties' settlement provides injunctive relief and attorneys' fees and costs, not

7    monetary relief, so this factor is not at issue in this case.

8            5.      Extent of Discovery Completed and Stage of the Proceedings

9            "In the context of class action settlement, 'formal discovery is not a necessary ticket to

10   the bargaining table' where the parties have sufficient information to make an informed decision

11   about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

12   (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class

13   action settlement thus "is proper as long as discovery allowed the parties to form a clear view of

14   the strength and weaknesses of their case."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

15   443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and

16   genuine arms-length negotiation."  *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D.

17   Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).  The court must consider

18   whether the process by which the parties arrived at their settlement is truly the product of arm's

19   length bargaining, rather than collusion or fraud.  *Millan v. Cascade Water Servs., Inc.*, 310

20   F.R.D. 593, 613 (E.D. Cal. 2015).

21           As detailed in the court's order granting preliminary approval, the court is quite satisfied

22   that the parties' negotiations constituted genuine and informed arm's length bargaining.  (Doc.

23   No. 88 at 6.)  The parties' negotiations followed extensive discovery and involved four separate

24   settlement conferences with a neutral magistrate judge during which the parties discussed and

25   debated variations of thirty-four injunctive relief terms.  (*Id.*; Doc. No. 92 at 25, 28.)

26           Accordingly, the court concludes that consideration of this factor weighs in favor of

27   granting final approval.

28   /////

1          6.      Experience and Views of Counsel

2          Class counsel from the ACLU and Munger, Tolles & Olson LLP have filed declarations in

3    support of plaintiffs' pending motion for final approval, in which they detail their extensive

4    experience in litigating complex civil litigation, including federal class actions, and emphasize

5    their experience since March 2020 in investigating and filing "actions relating to COVID-19 in

6    other detention facilities throughout California." (Doc. Nos. 92-1 at ¶ 6; 92-20 at ¶ 2.) Therein,

7    class counsel also state their belief in the merits of plaintiffs' case and their belief based on their

8    own investigation and evaluation that "the proposed Settlement Agreement is fair, reasonable,

9    and adequate, and is in the best interests of the proposed Settlement Class in light of all of the

10   known facts and circumstances and risks inherent in litigation," which "are heightened here

11   because of the constantly changing nature of the COVID-19 pandemic, which has been made

12   even more uncertain by widespread vaccine reluctance and the development of more contagious

13   variants such as the Delta variant." (Doc. No. 92-1 at ¶ 5.) Based on their experience and

14   qualifications, class counsel have concluded that this settlement is fair and reasonable.

15          Thus, consideration of class counsel's experience and expressed opinions in this regard

16   also weighs in favor of final approval of the settlement.

17          7.      Presence of a Governmental Participant

18          As Sheriff of Tulare County, defendant is a governmental participant, which weighs in

19   favor of final approval of the settlement. *See Moreno v. S. F. Bay Area Rapid Transit Dist.*, No.

20   3:17-cv-02911-JSC, 2019 WL 343472, at *5 (N.D. Cal. Jan. 28, 2019) ("BART is a governmental

21   agency, and as such, its participation and consent to the injunctive relief weighs in favor of

22   approving the settlement."); *Garcia v. Los Angeles Cnty. Sheriff's Dep't*, No. 2:09-cv-8943-

23   MMM-SHX, 2015 WL 13646906, at *11 (C.D. Cal. Sept. 14, 2015) (concluding that because

24   defendant county office of education was a government participant, consideration of this factor

25   weighed in favor of settlement); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F.

26   Supp. 2d 1021, 1031 (N.D. Cal. 1999) (concluding that the fact that "[t]he State and Local

27   Defendants are all governmental participants" weighs in favor of granting approval).

28   /////

1          8.          Reaction of the Class Members

2          "It is established that the absence of a large number of objections to a proposed class

3   action settlement raises a strong presumption that the terms of a proposed class settlement action

4   are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing

5   cases).  The presumption that a settlement is fair, reasonable, and adequate is particularly strong

6   when there is an absence of a single objection to a proposed class action settlement.  *See id.*;

7   *Barcia v. Contain-A-Way, Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal.

8   Mar. 6, 2009).  Nevertheless, "[a] court may appropriately infer that a class action settlement is

9   fair, adequate, and reasonable when few class members object to it."  *Cruz v. Sky Chefs, Inc.*, No.

10  4:12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill*

11  *Village,* 361 F.3d at 577).

12          As plaintiffs note in the pending motion, there are approximately 1,246 people currently

13  incarcerated in the Jails, and only 3 of them submitted objections to the Settlement Agreement

14  with the court.  (Doc. Nos. 92 at 31; 89–91.)  As noted above, one of those objectors subsequently

15  filed a declaration in which he withdrew his objection and encouraged the court to grant final

16  approval of the settlement.  (Doc. No. 90.)  Plaintiffs contend that "the very low number of

17  objections counsels in favor of concluding that the settlement is fair and adequate."  (Doc. No. 92

18  at 31, n. 18.)  Plaintiffs also note that these few objections arose in large part only due to

19  defendant's alleged failure to comply with the terms of the parties' Settlement Agreement, not

20  due to the objectors' dissatisfaction with the terms agreed upon therein.  (*Id.*)  Indeed, at the final

21  approval hearing, objector Anaya-Casarez explained that he was not objecting to the terms of the

22  settlement agreement but rather to defendant's alleged non-compliance with the terms of that

23  agreement.  Objector Sanchez's written objections express his concern that due to the spike in

24  COVID-19 cases, the Settlement Agreement's termination date of March 31, 2022 is premature

25  and too early.  (Doc. No. 91 at 4.)  Plaintiffs contend that while this objection is understandable, it

26  should be disregarded because the Settlement Agreement actually contemplates the possibility of

27  extension and provides for further extensions beyond March 31, 2022.  (Doc. No. 92 at 36.)  As

28  for objector Sanchez's concern that the settlement does not provide individuals being held in

1   protective custody with out-of-cell time, class counsel and defense counsel clarified at the hearing

2   on December 7, 2021—after meeting and conferring on this issue and reaching agreement

3   following the November 29, 2021 hearing—that under the settlement agreement individuals in

4   level 5 of protective custody (a designation level for inmates who are unable to program with

5   other inmates) are entitled to forty-five minutes of out-of-cell time pursuant to section 3.7(b) of

6   the settlement agreement, and that all other levels of protective custody are entitled to two hours

7   of out-of-cell time pursuant to section 3.7(a) of the settlement agreement.  At the December 7,

8   2021 hearing, counsel indicated their intention to file a stipulation memorializing their

9   understanding and agreement in this regard on the docket as soon as possible.  Thus, the court

10   incorporates that forthcoming stipulation by reference here.

11           Finally, although class members were not invited to affirmatively opt-in or express

12   support for the Settlement Agreement, the court notes that one class member, Jorge Rivera, filed a

13   letter expressing his interest and support for the parties' class action settlement.  (Doc. No. 94.)

14           In light of the few class members who objected to the settlement, their stated reasons for

15   doing so, and their ultimate withdrawal of those objections, the court concludes that the overall

16   reaction of the class has been positive and supportive of the settlement.  Thus, consideration of

17   this factor weighs in favor of granting final approval.

18            In sum, after considering all of the relevant factors, the court finds on balance that the

19   settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

20                                **ATTORNEYS' FEES AND EXPENSES**

21           In their motion for final approval of the class action settlement, plaintiffs also request that

22   the court award $95,000 to class counsel as reasonable attorneys' fees and expenses.  (Doc. No.

23   92 at 30–31.)  The Settlement Agreement provides for this award, as an agreed-upon sum of

24   $95,000 to be paid to Munger, Tolles & Olson LLP within thirty days of the date that the court

25   grants final approval of the class action settlement.  (Doc. No. 92-2 at 3, 8.)

26           This court has an "independent obligation to ensure that the award [of attorneys' fees],

27   like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In*

28   *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

1        Plaintiffs argue that class counsel vigorously advocated for the class and litigated this case

2 with the exclusive focus of obtaining injunctive relief, which they achieved with the TRO and

3 with negotiating the Settlement Agreement.  (Doc. No. 92 at 30.)  Plaintiffs contend that given

4 their successes throughout this case, "an award of $95,000 is a reasonable sum for their counsel's

5 time and expense."  (*Id.*)  Further, given the caps on attorneys' fees under the Prison Litigation

6 Reform Act ("PLRA"), this sum represents a significant reduction from plaintiffs' actual accrued

7 fees of approximately $800,000 and expenses of approximately $53,000.  (*Id.* at 30–31.)

8        Accordingly, the court is satisfied that the agreed-upon award of $95,000 for class

9 counsel's attorneys' fees and expenses is reasonable under the circumstances of this case.  The

10 court will direct that payment of this award consistent with the terms of the Settlement

11 Agreement.

**CONCLUSION**

13        For the reasons stated above:

14    1.     Plaintiffs' request for leave to file a memorandum of points and authorities in

15        support of their motion for final approval that exceeds the page limitation by five

16        pages (Doc. No. 93) is granted;

17    2.     Plaintiffs' motion for final approval of the class action settlement (Doc. No. 92) is

18        granted and the court approves the settlement as fair, reasonable, and adequate;

19    3.     The parties' request that the settlement be modified to reflect their stipulation that

20        Julian Martinez serve as proxy for Mr. Brady as the independent expert monitor

21        and to reflect their agreement that expert visits may continue until January 31,

22        2022 (Doc. No. 92 at 23–24) is granted;

23    4.     Class counsel is awarded $95,000 as reasonable attorneys' fees and expenses, to be

24        paid by defendant consistent with the terms of the Settlement Agreement;

25    5.     The parties are directed to effectuate all terms of the Settlement Agreement and

26        any deadlines or procedures set forth therein;

27 /////

28 /////

6.     This action is dismissed with prejudice in accordance with the terms of the parties'

settlement agreement, with the court specifically retaining jurisdiction over this

action for the purpose of enforcing the parties' settlement agreement for the

duration of its term, which is currently set to terminate on March 31, 2022; and

7.     The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   __**December 7, 2021**__          _____

UNITED STATES DISTRICT JUDGE